UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FENTRESS M. WILSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 14-0062-CV-W-ODS-P |
| SHERIFF MARK OWENS, et al., | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING THIS CASE**

Plaintiff, who was incarcerated at Platte County Detention Center in Platte City, Missouri, from November 29, 2011, to September 5, 2014, has filed *pro se* this civil action pursuant to 42 U.S.C. § 1983, seeking relief for claimed violations of his federally protected rights. Currently pending before this Court is defendants' motion for summary judgment (Doc. No. 29) and suggestions in support thereof (Doc. No. 30), to which plaintiff has failed to file a timely response.

**STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56(c), a movant is entitled to summary judgment on a claim only if he has made a showing that "there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986); *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983), *abrogated on different grounds by Wyatt v. Cole*, 504 U.S. 158, 159-61 (1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co,*, 398 U.S. 144, 157 (1970); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S.

1057 (1985). The inquiry performed is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## UNCONTROVERTED FACTS

In accordance with Fed. R. Civ. P. 56 and Local Rule 56.1(a), defendants set forth a statement of uncontroverted facts in their motion for summary judgment. *See* Doc. No. 30. Plaintiff has failed to respond to defendants' motion. Therefore, defendants' statement of uncontroverted facts will be deemed admitted.[1]

Defendant Mark Owen is, and was at all times pertinent, the Sheriff of Platte County, Missouri. Def. Ex 1. Defendant Captain Joseph Kind has been the Jail Commander at Platte County Detention Center since September 11, 2012. Def. Ex. 2. Plaintiff was incarcerated in the Platte County Detention Center (PCDC) from November 29, 2011, to September 5, 2014.

In October 2013, the PCDC's mail policy was as follows:

INMATE MAIL PROCEDURES

All incoming mail is checked for contraband by detention staff. Professional mail (legal and governmental correspondence) is accepted to the facility without request for exception. Mail that is clearly labeled as legal/governmental paperwork will be opened and examined for contraband, in your presence, and will not be read by detention staff members. Letters from an inmate to his/her attorney are mailed without examination or censorship.

Non-legal/non-government correspondence is accepted in the form of postcards. This practice provides a safer, contraband-free environment for both inmates and detention staff. All postcards not meeting the standards listed below will be

---

[1] Local Rule 56.1(a) states that "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See also Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial.").

2

returned to sender. Requests for exceptions to the postcard requirement (family pictures, etc.) must be made in writing (using an inmate request form). All exceptions require prior approval of the Detention Division Commander or designee. You may have only one pending picture request at a time. The request must include the sender's full name and address. Mail opened consistent with a mail exception and identified as not meeting the standards will be placed in the inmate's property. Outgoing mail is not similarly restricted.

Related requirements are as follows:
- Postcards may be no larger than 4.25 inches by 6 inches and must be properly addressed; must contain the sender's name/return address and the inmate's name (and preferably) cell assignment in addition to the Platte County Detention Center address listed below.
- Metered post cards are preferred and will generally be delivered unaltered; stamped mail will have the stamps removed which will likely damage some portion of the postcard.
- Postcards containing stickers, adhesive labels, watermarks, stains, lipstick, and/or any other suspect alteration/adulteration will be returned to sender.

Money orders, personal checks/cash for commissary deposit are not accepted through the mail (see COMMISSARY).

You may send outgoing mail as often as you wish, provided your letters do not violate United States Post Office regulations or the safe and secure operations of the Platte County Detention Center. Your mailing address while in custody of the Platte County Detention Center is:

> Platte County Detention Center
> c/o (your name and cell location)
> 415 Third Street, Suite 10
> Platte City, Missouri 64079

You are responsible for advising family and friends of the proper mailing address. A complete return address is required on all correspondence.

Inmates housed in separate dayrooms are not allowed to correspond/communicate by any means. Examples of prohibited communication include, but are not limited to: the passing of notes, telephone conference calls, U.S. Mail, and voice. If inmates are of immediate family, incarcerated in excess of 30 days and require direct communication due to exigent circumstances, the inmates must submit an Inmate Request Form to the Detention Division Commander, who may make an exception to this rule upon a demonstration of sufficient need. Correspondence between inmates held at different institutions is also prohibited for security reasons. The Detention Division Commander, upon written requires, may grant an

3

exception to this restriction permitting correspondence between family members held at different institutions. The request for exception must include hard-copy documentation of relationship (marriage license, birth certificate, etc.).

Exceptions to the aforementioned rules are at the Detention Division Commander's discretion and may be subject to such restrictions as necessary.

The Detention Division Commander and/or his designee reserve the right to search any incoming/outgoing correspondence as a preventive security measure.

Def. Ex. A p. 4; Def. Ex. 2.

In October 2013, the magazine policy was as follows:

READING MATERIAL

    ***

Magazines of any type are strictly prohibited. (August 2013 PCDC Inmate Handbook)

Def. Ex. A, p. 9; Def. Ex. 2.

In October 2013 the PCDC Inmate Grievance Procedures Policy was as follows:

You must file a grievance with the Detention Division Commander if you feel you have been subjected to abuse or abridgement of rights while incarcerated. All grievances must be submitted in writing on an inmate request form addressed to the Detention Division Commander. The word "Grievance" must be written on the top of your Inmate Request Form. You must file your grievance within forty-eight (48) hours of the alleged abuse or abridgement you are reporting. The Detention Division Commander/designee will investigate your grievance and resolve any issues found. You will be notified of the grievance findings in writing only.

If you feel the Detention Division Commander did not adequately address your grievance, you may file a Grievance Appeal to the Sheriff. All Grievance Appeals must be submitted in writing on an Inmate Request Form addressed to the Sheriff. The words "Grievance Appeal" must be written at the top of your Inmate Request Form. You must file your grievance within forty-eight (48) hours of receiving written notification of the Detention Division Commander's findings/actions. The Sheriff will investigate your grievance and resolve any issues found. You will be notified of the Grievance Appeal findings in writing only.

Your failure to exhaust each appellate level in the specified order and described manner will disqualify you from the grievance process.

Def. Ex. A, p. 18; Def. Ex. 2.

On October 21, 2013, plaintiff submitted the following request, "I would like to get permission to receive letters from my daughter, plus she would like to send magazines from a Bookstore for me also." Def. Ex. B, ¶ 11; Def. Ex. 2. Captain King responded, "Request denied. You may re-submit the request for letters, but must include enough detail to determine if appropriate. Magazines are prohibited because of the type of paper and negative effects on the systems in the jail." *Id*.

On October 24, 2013, plaintiff submitted the following request:

"I wrote asking about being approved/permission to receive letters and magazines from my family and friends. Because the post card isn't big enough for family and friends to correspond properly. The post cards also interfere with the communication line between myself and family because of the space they have to write when sending information. As far as the magazine maybe you can explain in more detail because fa as I no [sic] it's my right to receive reading material."

Def. Ex. C, ¶ 12; Def. Ex. 2.

On October 25, Captain King responded:

Based on the information you provided your request is denied. If you have additional, more specific information that I should consider, please re-submit. Dislike of our mail procedures is not enough to warrant a mail exception. I will provide no more information regarding the prohibition of magazines. Please review your inmate handbook.

Def. Ex. C, ¶ 12; Def. Ex. 2.

The following day, plaintiff filed a "Grievance" claiming the PCDC mail policy violated his civil rights. Plaintiff again stated "I am asking again to approve me to have letters and magazines." Def. Ex. D, ¶ 13; Def. Ex. 2. Captain King responded on October 28th:

You mistakenly refer to our mail procedures as postcard only. This is not true as

5

> you are permitted the opportunity to request exception. Our procedure is thoroughly outline[d] in the Inmate Handbook. However, you have not provided enough information to warrant exception of the postcard procedure. You are welcome to submit a request for exception detailing everything you want me to consider with the request. The request should be specific and include facts other than you do not agree with our mail procedures. As explained before, magazines are prohibited for safety and security reasons.

Def. Ex. D, ¶ 13; Def. Ex. 2.

Plaintiff submitted a "Grievance Appeal" on October 29, 2013. Plaintiff reiterated his claim that the policy infringed upon his constitutional right to correspond with his friends and family. Plaintiff stated, "Because of the postcard-only policy in the PCDC I'm not able to receive letters or magazines etc; However if you provide specific detail that may indicate enough information that Capt. King may consider your request that is generally denied." Plaintiff concludes by requesting the policy be changed so he can receive "the things [he] has a right to receive." Def. Ex. A, ¶ 5; Def. Ex. 3.

> Acting Sheriff Holland responded:
>
> Upon review you have not been denied any access to religious or reading materials. As Captain King explained magazines present a hazard to the facility. Mail exceptions are routinely granted to those who detail the need for the exception in their request. If an exception is denied you need to submit a detailed request stating the reason an exception is needed as you have previously been directed to do by Captain King. These policies have been reviewed by legal and appropriate procedures are outlined in the inmate handbook."

Def. Ex. A, ¶ 5; Def. Ec. 3.

Outgoing inmate mail is not restricted by the mail policy. Def. Ex. A, p. 4; Def. Ex. 2. Inmates are notified in writing when they receive mail that fails to comply with the policy. The non-compliant mail is either returned to the sender with a postcard detailing the policy or placed in the inmate's property. Def. Ex. 2, ¶¶ 17-18. Inmates are allowed to communicate with family

6

and friends via the telephone.  Def. Ex. A, p. 1; Def. Ex. 2.  As of April 2014, each day room is equipped with a kiosk by which the inmates can correspond with family and friends via email and video conference.  The access to email is unlimited.  Each email costs 25 cents.  Video conferencing costs 35 cents per minute with the friend or family member providing payment.  Def. Ex. E, pp. 9, 14; Def. Ex. 2.

The mail policy of PCDC was revised to restrict non-legal, non-governmental incoming mail to postcards in 2010.  Def. Ex. 4.  Captain Randall Pittman, then Jail Administrator, learned of other institutions implementing policies restricting incoming inmate mail to increase jail efficiency and limit contraband.  *Id*.  Prior to implementing the policy, Captain Pittman researched and reviewed court decisions where it was determined similar policies did not violate the inmate's constitutional rights.  *Id*.

Prior to 2010, all incoming mail was searched by the midnight shift officers.  These officers commonly reported screening envelopes and letters that contained tobacco, bodily fluids, strong perfume odors, pornographic photos, and detailed discussions of witness tampering.  *Id*.  PCDC administration were aware of instances in other jurisdictions where incoming letters were written on paper laced with LSD and methamphetamines that had been reduced to liquid form soaked into the paper and allowed to dry.  *Id*.  PCDC administration was aware of threats posed by chemical weapons that could be concealed in envelopes and allowed through to the facility due to human error during the inspection process.  *Id*.

In the experience and knowledge of the PCDC administration, contraband in a detention facility often leads to inmate conflict and violence.  Def. Ex. 4; Def. Ex. 2.  Inmate conflict and violence are a threat to officer and inmate safety.  *Id*.  Requiring jail staff to inspect all incoming

7

mail increases the possibility that contraband could be introduced into the jail through human error. Def. Ex. 4.

The current PCDC mail policy allows guards on the midnight shift to provide better security and supervision to the inmates. *Id*. Increased supervision of inmates results in a safer environment for detention officers and inmates. *Id*. The staff time required to sort mail was reduced by at least 90% after the mail policy change. *Id*. The PCDC mail policy now allows the inmates to receive their mail in a timelier manner. *Id*. Following the implementation of the policy, the jail noted a sharp decline in perfumed mail, sticky mail, or mail that appeared soaked in bodily fluids. *Id*.

Captain Pittman cannot recall refusing a detailed inmate mail exception request. *Id*. Detailed inmate requests for exceptions to the mail policy are routinely granted. Def. Ex. 2. Exceptions routinely granted include requests for receipt of pictures, letters from elderly or disabled relatives who cannot write in small script, and letters by children. *Id*.

Magazines printed on glossy paper are prohibited from entering the facility. The PCDC policy prohibiting magazines has been in effect since at least 2001. Def. Ex. 4. The glossy paper presents a hazard to the facility in that it has been used in the past to clog toilet drains flooding the facility with sewer water and it has been used as body armor to block the effectiveness of a strike when necessary to restore order. *Id*. In the 11 years Pittman served as Detention Center Commander, he did not encounter inmates using permissible materials to manufacture body armor. *Id*.

## POSTCARD AND MAGAZINE POLICY

Plaintiff contends that the incoming mail policy of PCDC restricts the mail that plaintiff

8

can receive in violation of his First Amendment rights. While inmates retain constitutional rights protected by the First Amendment, including the right to free speech, those rights are often lawfully restricted. *See Fegan v. Norris*, 537 F.3d 897, 902 (8th Cir. 2008). The Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), recognized that rights may be restricted and implemented a four factor test to determine whether the restriction is "reasonably related to legitimate penological interests." *Id.*; *see also Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012), *cert. denied,* 133 S. Ct. 130 (U.S. 2012) ("Because the Constitution 'permits greater restriction of rights in a prison than it would allow elsewhere,' restrictive prison regulations are normally reviewed under the four-factor *Turner* test to determine whether they are 'reasonably related to legitimate penological interests.'")

The *Turner* factors consider (1) the valid and rational connection between the regulation and the asserted legitimate governmental interest; (2) alternative means of exercising the constitutional right; (3) any effect accommodating the right would have on guards and inmates; and (4) the absence or existence of ready alternatives. *Turner*, 482 U.S. at 89-90. Additionally, "[s]ubstantial deference is to be given to the professional judgment of prison administrators." *Rogers v. Kemna*, 2008 WL 596250, *2 (W.D. Mo. 2008).

1. Rational relationship between regulation and penological interest.

The PCDC mail policy restricting incoming mail to postcards, with notable exceptions, is rationally related to the legitimate governmental interests of limiting contraband within the facility, increasing staff ability to provide supervision and security, limiting staff exposure to potentially harmful contraband and increasing jail efficiency. *Turner* makes clear that jail security is a legitimate penological interest. *Gieck v. Arpaio*, 2008 WL 2604919, *5 (D. Ariz.

9

June 23, 2008); citing *Turner*, 482 U.S. at 91.  Other courts have determined that policies limiting mail to postcards were rationally connected to prison security, finding:

> Sealed envelopes provide a greater opportunity for the introduction of drugs and weapons into jail facilities than postcards because envelopes can contain multiple pages of paper with folds and creases that lend themselves to smuggling contraband.  Postcards have no folds or creases.  Even if a jail staffer has to remove the stamp from a postcard to make sure no contraband lies beneath, that effort pales in comparison to the effort necessary to inspect a sealed letter or a pop-up greeting card thoroughly.

*Althouse v. Palm Beach Cnty. Sheriff's Office*, 2013 WL 536072 *5 (S.D. Fla. Feb. 12, 2013).

Defendants have submitted evidence demonstrating that the implementation of the postcard mail policy at PCDC resulted in reduced opportunity for contraband to enter the jail through human error; decreased the exposure of jail staff to harmful odors, bodily fluids, and potentially dangerous chemical substances; and increased jail efficiency in that officers are able to devote their time to supervision of inmates rather than sorting mail.  Plaintiff has not disputed these facts.  PCDC has evidenced that the postcard mail policy is rationally related to preventing contraband from entering the facility and thus decreasing risk of harm to inmates and staff as well as increasing jail efficiency, both of which are considered by the courts as legitimate penological interests.

The PCDC policy prohibiting magazines also is rationally related to the penological interest of maintaining an organized and peaceful facility.  Prior to the implementation of the policy, inmates routinely flushed magazine pages in the toilet resulting in clogged toilets, backed up sewage systems, and at least one instance of flooding the facility.  Inmates used the glossy magazine pages as body armor, minimizing the effectiveness of hand or bar strikes when necessary to maintain order.  Inmates are free to subscribe to national newspapers or other publications

10

which are not distributed on glossy paper. Newspaper paper and paper typically used in books do not present the same hazards and are allowed.

Unlike other policies struck down by the courts for banning all newspapers and magazines, the PCDC policy is curtailed to prohibit only magazines printed on glossy paper. Courts which have found blanket bans unconstitutional are easily distinguished as those policies banned all newspapers and magazines and the inmates had little or no access to news. *See Mann v. Smith*, 796 F.2d 79, 82-83 (5th Cir. 1986) (blanket ban of all magazines and newspapers struck down); *Spellman v. Hopper*, 95 F.Supp.2d 1267 (M.D.Ala.1999) (absolute prohibition on subscription magazines and newspapers for administrative segregation inmates in Alabama violated 1st Amendment Rights).

In *Prison Legal News v. Cheshire*, 2006 WL 1868307, (D.Utah June 30, 2006), the court found the transient nature of the local county jail population a critical fact in analyzing the magazine ban. In *Cheshire*, the average inmate stay was 30.7 days. In PCDC, the average inmate stay is 12.35 days. The *Cheshire* court considered it would take 4-6 weeks to begin a magazine subscription. The transient nature of the jail population provided a rational reason for prohibiting personal magazine subscriptions. *Cheshire* at *6. The same analysis applies here; it makes little sense to allow inmates who average less than a two week stay a monthly or even weekly magazine subscription. The evidence presented establishes the policy prohibiting glossy magazines is rationally related to multiple legitimate penological objectives.

2. Alternative means of exercising the right.

PCDC provides alternate means communication between inmates and those outside the jail, including in-person visits, phone calls, postcards, mail exceptions, email, and video

11

conferencing. PCDC policy does not regulate outgoing mail or limit the amount of incoming mail. Similar alternative means have been deemed sufficient by other courts. *See Gieck v. Arpaio, supra* (ability to receive and send an unlimited amount of mail, receive visitors, and speak on the telephone held sufficient); *Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1154 (D. Ariz. 2009) ("Metered postcards, telephones, and jail visits may in Plaintiff's view be less than ideal means of communicating with his family and friends, but jail-provided alternatives need not be ideal."); *Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012) ("Alternatives to the type and amount of speech at issue need not be ideal . . . they need only be available.") (internal citations omitted). PCDC has demonstrated sufficient alternative means of communication.

PCDC also provides alternative means accessing the news. PCDC does not prohibit national or non-local newspapers from being subscribed to, and allows inmates to watch television.

3. Effect of accommodating the right.

The obvious effects of reverting back to allowing unlimited letters and envelopes would be to increase the risk that potentially harmful contraband would enter the facility, to require more time to be spent inspecting mail and less time supervising inmates, and to subject guards to potentially harmful odors and bodily fluids in searching the mail. The Supreme Court has stated that "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90, 107 S.Ct. 2254. Several other courts have held that these effects were persuasive. *See Althouse* at *5 (That the "policy gives the jail security staff more time to deal with prison security assignments because they can spend less time screening

12

envelopes for contraband" found persuasive.); *Gieck,* at *7 (Evidence that non-postcard mail increases the likelihood of smuggling contraband into the jail, thereby causing conflict between inmates, confrontations, and violent acts relating to contraband transactions among inmates and resulting significant increase in the use of staff resources inspecting non-legal mail for contraband held sufficient.)

This Court is aware that other courts, including the District of Kansas[2], have held postcard-only policies to be unconstitutional. Those courts found that the postcard-only policies failed *Turner's* rational relationship factor because the defendants did not demonstrate the existence of an inmate mail security problem and a credible explanation of why a postcard only policy is more effective at preventing the introduction of contraband than opening envelopes and inspecting their contents. *Prison Legal News v. County of Ventura*, 2014 WL 2736103 (C.D. Cal. June 16, 2014); *Prison Legal News v. Columbia County*, 942 F. Supp. 2d 1068 (D. Ore. Apr. 24, 2013). In the instant case, however, defendant Pittman has stated under oath that he received multiple reports from officers screening the mail who had intercepted contraband hidden in envelopes and letters and that the postcard-only policy has resulted in a safer environment for officers and has reduced the amount of staff time spent on mail, rather than on jail security, by 90%. Doc. No. 30-11, pp. 2-3.

The obvious effect of reverting back to allowing glossy-paged magazines presents a heightened security risk due to the use of the magazine pages as body armor. Inmates have been known to use these pages to clog toilets and induce flooding in the facility. A hazard such as flooding necessarily distracts guards, reduces supervision, and increases the risk of inmate violence resulting in an increased risk of harm to inmates and guards.

---

2 *Cox v. Denning*, 2014 WL 4843961 (D. Ks. Sept. 9, 2014). That case is set for trial on March 9, 2015.

13

4. Ready alternatives.

Only where "plaintiff identifies an alternative that fully accommodates the right at a *de minimis* cost to valid penological goals, is the policy considered an 'exaggerated response.'" *Covell* at 1154-55 (D. Ariz. 2009); *citing Turner*, 482 U.S. at 90-91. "[I]f an *inmate* claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Gieck* at *7; citing *Turner*, 482 U.S. at 90-91 (emphasis original). Here, plaintiff has failed to proffer an alternative to the present postcard or magazine policy.

As the *Turner* factors favor the PCDC postcard and magazine policies, plaintiff has failed to show a violation of his first amendment rights based on PCDC's postcard or magazine policies; therefore, defendants' motion for summary judgment will be granted.[3]

## QUALIFIED IMMUNITY

As to defendants' claim that they are protected by qualified immunity, government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate a clearly established statutory or constitutional right which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

---

[3] Defendants further assert that plaintiff failed to properly exhaust administrative remedies in regard to the necessary amount of detail provided in his mail exception request. Because a "postcard only" mail policy has not been addressed by the federal courts of Missouri or the Eighth Circuit, the Court instead discusses only the merits of the policy.

14

The Court uses a two pronged test to determine if a government official is entitled to qualified immunity. *See Weiler v. Purkett*, 137 F.3d 1047, 1050 (8th Cir. 1998). The first prong of this test is to determine whether or not the plaintiff has alleged a deprivation of a constitutional right. *Id*. The second prong of this test is to determine if that constitutional right "was so clearly established that a reasonable public official would have known his or her conduct violated the Constitution at the time of the act." *Id*. In this context, the qualified immunity defense is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

As stated above, plaintiff fails sufficiently to allege a violation of a constitutional right. Even if plaintiff had established a violation of a constitutional right based on PCDC's postcard and magazine policies, the right to of an inmate to receive letters and magazines while incarcerated was not so well-established at the time of defendants' acts that they should have known their conduct violated the Constitution. *See Salam v. Delaney*, 2014 WL 4961185, *11(W.D. Ark. Sept. 30, 2014); *Pergande v. Trumbo*, 2013 WL 4083337, *2 (D. Or. Aug. 7, 2013). Therefore, defendants also are protected from plaintiff's claims by the doctrine of qualified immunity.

Accordingly, it is **ORDERED** that:

(1) defendants' motion for summary judgment (Doc. No. 29) is granted;

(2) this case is dismissed with prejudice.

    /s/ Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: February 18, 2015.

15